Good morning, Your Honors. Elizabeth Zaria for Appellant Nahid Noori. Thank you for the honor and privilege to argue this case today. The reason I stand before you is because my client is alive and in fact she is sitting in the gallery here today. We are here because the District Court granted the summary judgment motion that Bank of America brought and also granted them almost $10,000 in cost with regards to the case. So I'll be raising two broad issues. One, that there are tribal issues of fact in this case and also that under the fifth cause of action, because this was a State claim originally, Ms. Noori is the prevailing party in this case under the statute. With regards to the facts of the case, this case actually started in December of 2012 when Bank of America used one report with one Social Security to update the status of two separate individuals with CRAs. And what it did in that report was reported one individual to be deceased and the second one to be alive. And using one Social Security number for two separate individuals and it connected it to a closed account. The account was actually closed two years earlier. What it did not do, it never closed the HELOC account that my client had and it never reported that that account somehow was connected to Ms. Noori who was reported as a deceased. So when Ms. Noori called to update her status and information with the bank, the bank realized that they had indicated a deceased indicator on their own internal records. They learned that they have an error here. They took no steps. They took no actions until my client actually attempted to purchase a home and she obtained a copy of her report and learned that she was deceased. So maybe just that seems to be the most critical element of damages for your client here. Is that a fair statement? Your Honor, yes, yes. Okay. Because it just seemed as though maybe you can help us with this, that you as her lawyer should have done a much better job assembling the evidence to support her claim that in fact she had an accepted offer to purchase the house at a particular price. And we have nothing from you on that front other than I think it's just her declaration and the thing from Glendale Federal declining the loan, right? Your Honor, my client, as she testified during the course of her deposition, I was the trial counsel as well as the appellate counsel. My client never, ever anticipated to be standing here today or having a case. She had a real estate agent on the transaction, no? My understanding was she had a real estate agent. We did attempt to get the records, but we couldn't. They did not have any copies of the records. I'm as good as the records I can obtain, but the standard is not. Did you contact the seller? I'm sorry? Did you contact the seller and get a declaration from them saying that, yes, in fact, we had a signed, we accepted her written offer? Because this doesn't, you're not going to have a binding contract for the sale of a property without something in writing. So I'll grant you that maybe you can't, you don't have, your client doesn't have the documents anymore, but there were other people who were involved in the transaction who presumably could have provided declarations, no? Well, Your Honor, there is a declaration from the ex-husband with regards to the purchase of the property. There are other evidence within the record to indicate that she actually was in the process of purchasing the property. But what I'd like to emphasize, though, I don't believe this circuit requires documentary evidence and testimony is sufficient, and we've cited a number of cases with regards to that. So you don't necessarily have to have an evidence, documentary evidence to prove that you were actually in the process of purchasing the property. Okay. So help me with this. So the bank tells us that the sale of the home occurred in, I want to say they claim June of 2013, maybe it was July of 2013. The letter that your client received from Glendale Federal, isn't it in August of 2013? Your Honor, what happened was I contacted Glendale Federal, and we attempted to get a copy of the denial of the loan, the qualification for the loan, actually. And I believe they have a form number, but I don't remember what the form number is. And they told us they have a soft copy, they don't have a hard copy. Apparently in their system they store it, but they don't store a hard, like a PDF format, which you can print. So when they printed the soft copy, it automatically generates and updates the forms. And it just prints it on a new form as opposed to the old form, which was the old form that was dated. Where does the August 2013 date come from? Your Honor, I may be lost on the date, so if you can direct me to it. Well, I just hope, I mean, your evidence on this is very suspect. I guess I'm just trying to get you to help me understand what I'm missing. The bank is saying that this sale occurred earlier in the summer than the date on the letter that your client claims is the key proof that she was harmed by the bank's misconduct. Your Honor, I think there's a little bit of confusion on the date, because what happened was my client attempted to purchase the property in June of 2013, and the document that you're referring to regarding to August, I believe it refers to the printed form, which has like the, like we use judicial counsel forms in our practice, and you always get a date as to when the form was updated. And I think the date you're referring to, your Honor, relates to the date of the form itself, as opposed to the content of what the Glendale Federal provided in that record. But there's also testimony, your Honor, from, in a form of a declaration from the ex-husband, that he actually saw the letter when it was sent out to her. Because as it was provided to the lower court, my client was homeless for a number of months, and she was receiving her mail at her ex-husband's property or home, and he was opening and cleaning up and organizing something because she just didn't have a place to put them. And he reviewed that letter. So he testified in his declaration as to the content of the letter that he saw when the denial was submitted. And keep in mind, she had waited such a long time to go to the process of getting her credit cleaned, because Bank of America made the promise that they're going to do that. And they actually, and she kept on going back to the branch to meet with the employees and discussing the fact that, okay, what is the status? I want to get an update. I want to find out what's going on. And they kept on telling her, we're working on it. It's coming up. It's happening. They just kept on telling her they're working on it. So even if we assume that she had lost this deal with regards to this home, she was still in the process of being qualified for some other property. This wasn't the last property on earth that she could purchase. Obviously, she could have found something else to purchase the property. But you're only claiming damages for the inability to purchase this one home back in Juneau. No, Your Honor, actually. There are other damages that we claim. No, no, no. I'm talking about real property. Oh, yes. You just started talking about other homes she was trying to purchase. Those are neither here nor there. We're talking about this one home that she tried to purchase in June. There's the TVs and the cars. I get that. Right, right, right. But there's no other homes. No, no. Yeah, yeah. Okay. That's correct, Your Honor. That's correct, Your Honor. So with regards to – I apologize. So basically, Bank of America made all these promises to Ms. Nouri that they're going to file a dispute on behalf of her with the CRAs, and they were going to take care of it. And in fact, their own internal records show that they did make those – they filed those disputes on her behalf with the credit reporting agency. They did receive letters from the credit reporting agency with regards to the disputes. But then Bank of America takes the position that the disputes can only come in one single format, which is the ACDB format, and they seem to be under the impression. I don't read them as – maybe they're making that argument, but I thought the more compelling argument they make is for your 1681S-2 claim. I can't remember what the terminology is, but the thing has to come from the CRA to the bank, right? Right. And they're saying that you don't have any evidence that any communication went in that direction at all, whether it was in this form, that form, or any form, right? That's not correct, Your Honor. We do, because their own internal records indicate – and I'll draw the Court's attention to – and we've cited it in our – Sorry. Your Honor, their own internal records indicates that – ER-309, actually, Your Honor, they're referencing credit bureau report dispute letters. And then also in ER-302, they're also referencing credit bureau dispute letters. So they're referencing letters, and as I understand it, during the course of the depositions and also during the course of the summary judgment that I participated in the oral arguments, their position was always limited to ACDBs as opposed to actual form of letter. And the format made a difference to them, and they kept on claiming that the statute and also the processes they had set up requires notice through ACDBs. And for that purpose, they insisted that it has to be through ACDBs. I just noticed I only have about four minutes left, so if I can reserve that for rebuttal. Yes. Thank you. I appreciate that. Thank you. Good morning, Your Honors. Good morning. My name is Jan Chilton. I'm here on behalf of the Bank. Let me start off with the point that counsel was just discussing, which is, was there any communication from a CRV of any sort? CRA, I'm sorry. It's not a car. From a credit reporting agency of any sort to the Bank. And she cited two pages of the transcript, 302 and 309. We quote those in our brief at page four. They say nothing about a communication in that direction. 309 says, Informed consumer that a credit bureau dispute has been filed and that she will receive confirmation via the mail. Reviewed case number so and so. Seems to be closed. Referring the customer to credit agencies directly. Sent the credit bureau report dispute letter. In other words, we sent them, not they sent us. And the same thing is true of 302. It says, That shows we were able to remove the deceased account indicator and provided a letter to back credit bureau disputes that were filed. So there was simply no communication from the credit bureaus to the Bank here to trigger the duty of reinvestigation under 1681, excuse me, S2B. And I must say, in addition, we do make the argument, and I think it's legally correct, that the 1681e, I believe it is, requires a notice of dispute to be in the manner that's agreed upon between the CRA and the furnisher. And the reason for that is explained in our brief, that otherwise dispute letters could come floating into some remote branch that's not experienced in handling these sorts of things. They are all handled through ACDVs, automated customer dispute verification forms that are sent by the eOSCAR system to a particular responder that's used to handling this sort of thing. That's why the statute requires communications of disputes in a particular manner, and that definitely was not done here. Our expert, Alzheimer, in his declaration explains that if such a dispute on ACDB had been sent by the eOSCAR system, there would be a record of the ACDB, there would be a log on the eOSCAR system, there would be other indicators, none of which existed here. The court below decided there was no evidence, no evidence. And with the sale of this property, I find that a little difficult to say no evidence. There's some evidence. I went through it and I found seven or eight pieces of evidence that seemed to me to be germane to this issue. On the damages point, Your Honor? No, on the complete issue of the whole process, of whether or not you have a reasonable process in the bank, et cetera, et cetera. I just wonder if the trigger was pulled a little prematurely. When you say there's no evidence and you make your ruling on that basis, if there is some evidence, then we have to send it back. I'm finding some difficulty that there isn't some evidence. Well, it depends on what issue you're talking about, Your Honor. I agree with your basic proposition that if the trial or the district court had said there's no evidence and you can find evidence in the record, then maybe on that issue the summary judgment is not sustainable, unless it's sustainable on an alternative ground. And here, if we're talking about the FCRA cause of action, there were two grounds of the decision. One was no dispute letter was sent. The other was no damages. And I believe you're addressing the no damages point. Yeah. Which I don't necessarily agree with your position, but my point is that even if you were correct that there was some evidence of damage that doesn't get around the other requirement that was not fulfilled here, which is showing that an ACDV was sent by the credit reporting agency to the bank. So even if there was some evidence of damage, if the duty to reinvestigate wasn't triggered properly under the statute, there's no remedy under the FCRA. It's in this Donatella Drive thing, and it says there's a checking on the box, other deceased, other hyphen, deceased status for the denial. Isn't that some evidence that there is, that there's, that should have gone to further than just dismissal? No, Your Honor. I don't believe so for a couple of reasons. First off, we challenge that denial letter as fabricated evidence. You know, you'd be able to do that at trial, but they produced it. Well, they produced it, but the district court could and I think should have and did, I think, disregard it because it did not consider it to be. No. The district court said there's no evidence. No evidence that it was willing to consider. But the other thing is, just saying you didn't get a loan because of the deceased status doesn't show that the purchase of the property would have gone through anyway. That's what has to. That's true, but she had these affidavits in here that you know all about that look like that the money was there and the price was right and they pretty well got some evidence in that, but for this unfortunate thing that says that she's deceased, that she would have been able to purchase that property. Well, I would disagree with Your Honor, but in any event. Tell me why, because I'm hung up on that issue. We believe, for the reasons that I think Judge Watford explored in questioning, that there would be documentary evidence of a sale if a sale had actually been in the cards. Just saying I've got the money and the price looks right to me doesn't mean that the You have to have a willing seller and a willing buyer agreeing to an agreement. There's no evidence of such an agreement. But if the agreement didn't happen because of the person having this come before them that the buyer is really dead, then that would be enough, wouldn't it? Well, I don't think so, because at least in ordinary real estate transactions, the way it goes is the other way around. Yeah, but at this stage, we're not asking them to prove the point. All that's required is to provide some evidence. It's, quote, some evidence, close quote. And they haven't crossed all the Ts. They may well lose, but the only question is, was summary judgment premature? I agree with that. And I go back to my first point, which is even if there's a question about damages, there's no question about lack of an HCBV, no question at all. There was no evidence whatsoever on that issue. So it doesn't matter whether they can prove damage. If they can't prove liability, they still can't recover. So you interpret some evidence to mean evidence that can prove their issue. No. That is, that they have to produce evidence that they can win on. No. No, Your Honor. So what do they need? I'm sorry. I think we're speaking past one another. Yeah. My point is that the summary judgment was based on two independent reasons. You're speaking about one of them. Yeah. And at this point, since I haven't been able to convince you otherwise, I'm willing to concede. No, I just have a question in my mind. I'm not even telegraphing an issue that I feel in it. I'm willing to concede the point on damages for the moment if that's the way you're going. My point is she had to succeed on appeal. The plaintiff must also show reversible error as to the other independent ground on which the summary judgment was granted, and that was the lack of an ACDV from this ---- gosh, I hate all these abbreviations ---- from the credit reporting agency to the bank. Yeah. And because she can't overcome that independent basis for the summary judgment motion, the issue on which Your Honor is focused so heavily is simply unnecessary to the decision. Can I ask you? I understand where you're coming from on that. Can I ask you about the CCRA claim under the State claim? The State claim, yes. Let's just shift entirely, if you could, to the State claim. Shoot. Because I guess I ---- the 1785.25a statute, right? Right. I don't understand why she does not have a completely valid claim under that statute, because that statute is punishing or imposing liability for the front-end mistake that you, your client made, not the back-end failure to fix the thing with the CRAs. And so why doesn't she have a viable claim under that statute? Well, there are four reasons stated in our brief. And to reiterate them very quickly, first off, Paul versus F, co-financed. Wrong. That decision is just flatly wrong. It's not consistent with the statute. So I don't think the California Supreme Court, if it ever were called upon, to decide this question would go there. So ---- I won't belabor it. But no, tell me if I'm missing something, because it says a person shall not furnish information on a specific transaction. And your client did furnish information to the CRAs that everybody agrees now was false. So under the plain language of the statute, liability is triggered. I recognize what Paul versus F said, but I don't see how that can be reconciled with what the statute says. Well, all I can say is it's the only California published opinion on this point. It unequivocally holds. Okay. Can you reconcile what the Court said there with the language of the statute? I believe that what the Court was saying, can I reconcile it? Yes. Okay.  The section that you're citing. Subsection A. The only one that's not preempted. Subsection A, right, was enacted in 1993. That was actually after the Pulver decision. And what the legislature did not do at that time was overturn Pulver either directly or indirectly. It did not change the language of the liabilities section, point 31. And we believe that that shows the legislature did not intend to overrule Pulver. Okay. But I'm talking about, I ask you to just forget about Pulver for a second. Just help me with respect to what your client did here. Line it up with what part of the statute is not satisfied. There are two other, apart from damages, there are two other reasons why we say this is improperly dismissed. One is we maintained reasonable procedures, which is a defense to this claim. Okay. What procedures with respect to the front-end error? What evidence did you put on of those procedures? To prevent the mistake when somebody comes into one of your client's branches and says my father died, you're people not instead saying it's the daughter-father? Is that the relationship? Wait a minute. That's not the front-end mistake. The front-end mistake was the initial report. No, no, no. That's the mistake. That's the incorrect information that you all furnished on the front-end to the CRA. So you need to put on evidence to prevent that mistake from occurring. And I didn't see any evidence in the record as to that. You put on evidence about the back-end procedures. And I'm talking about the front-end mistake that you all made. The front-end mistake was a mistake of attributing a Social Security number to the wrong customer. No. It was you being, your client being told that a father died and you all reporting to the credit reporting agencies that the daughter died. That's the mistake. That is all she's complaining about. But that, but she told us that she was alive after the mistake had been made. That's my point. But nobody screwed up in terms of communicating the information to your client. Nobody said mistakenly that the daughter had died. They told you the father had died. You all are 100 percent responsible for screwing this up. Because you all reported to the credit reporting agencies that the daughter died. Nobody gave you bad information. The question is whether it's a reasonable mistake following reasonable procedures. And I think here the evidence is clear that it was a reasonable mistake. We had one Social Security number. And, you know, we had no way of telling which individual it belonged to. We reported it mistakenly for one of them. Okay. Do you have any other arguments? Because I don't find that persuasive in the least. You said you had four. We've covered two, neither of which have helped much. What are the other two? Well, the statute is violated only if the bank knew or should have known at the time it made the incorrect, furnished the incorrect information that the information was incorrect. Oh, yeah, you most certainly should have known that. But when someone tells you by the person's name that this person died and you report that a different person died, I don't understand how could that be? How could you not have known that you should not have made that mistake? I grant you if they came in and they gave you some misinformation, they gave you the wrong Social Security number. They gave you the wrong name. I grant you that. But as far as I can tell from the record, they gave you all the correct information as to which person died, and you all unilaterally screwed that up by reporting that somebody else died. Am I missing something? I don't believe that we were told that the father died until the daughter came in and said, you've got the wrong person. And that was after. No, she came in and told you the father died. That's how you all found out about that, right? I'm sorry. I don't remember that part. Okay. I can't respond to it. Counsel, may I ask you, is it your position that there is no liability on the part of the bank unless the notice is given pursuant to the ACBD? Is it your position that unless that particular form is used to give notice of the error, there is no liability? Under the FCRA, the notice of dispute has to be given in the manner agreed by the CRA and the furnisher. And that's the ACDB system, in your view. And in our view, that was what the agreement between the bank and the CRAs in this case required, an ACDB sent by the eOSCAR system so that it could be properly processed. However, let me just say, we also say that there's no evidence of any communication, whether sent by an ACDB or some other means, from a credit reporting agency to the bank about this dispute. So it doesn't matter if you got notice of dispute from Ms. Norrie? That wouldn't matter? Absolutely not. Okay. There's case law in that, which we cite in our Respondent's brief, or, excuse me, Appellee's brief, that a direct dispute by the customer is not sufficient to trigger the duty under the FCRA. All right. Thank you, Counsel. The bottom. Just a few quick points, Your Honor. With regards to ER-302, there's an internal memo from Bank of America, within Bank of America. And in that document, they talk about that they provided a letter back to credit bureau disputes that were filed. They're explicitly referencing credit bureau disputes that were filed. So they're referencing letters. Now, with regards to notice from Ms. Norrie, Your Honor, in a normal course of cases, it's been held that regular notice from a consumer is insufficient for the bank to take actions. However, there's nothing in the statute that prevents the bank from assuming liability and waive their right under the statute. In this case, we've argued that Bank of America, by promising Ms. Norrie that they're going to file the disputes with the CRAs, they've already waived that requirement. And it is within, in fact, I would cite the language that was quoted by this court in Nelson and in Gorman, where the court actually discussed the policies behind as to why the buffer was created to allow the banks to be shielded from liabilities and give them some room. However, there's nothing in the language of any of these two cases that prohibited or somehow limited the waiver by the bank, by their own conduct, to waive the requirement of the notice. If you have any further questions, I'll be more than happy to answer. It appears not. Thank you, counsel. Thank you to all counsel, to both counsel. The case, as argued, is submitted for decision by the court. That completes our calendar for the morning. And we are on recess until 9 a.m. tomorrow morning.
judges: Wallace, Rawlinson, Watford